UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN DIAZ OROPEZA,<br><br>    Plaintiff,<br><br>    v.<br><br>MOISES BECERRA, et al.,<br><br>    Defendants. | Case No. 22-cv-09126-DMR<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 13 |

Petitioner Benjamin Diaz Oropeza ("Diaz") is a noncitizen from Mexico who is currently in Immigration and Customs Enforcement ("ICE") custody pending the conclusion of his removal proceedings. Respondents are Moises Becerra, Field Office Director of ICE's San Francisco Field Office; Tae D. Johnson, Acting Director of ICE; Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); and Merrick B. Garland, the United States Attorney General.

On December 27, 2022, Diaz filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asks the court to order his release from custody within 14 days unless Respondents schedule an individualized custody hearing at which "ICE must establish by clear and convincing evidence that [he] presents a danger or flight risk" in order to continue his detention."[1] [Docket No. 1 (Petition) ¶ 4.] The parties filed a stipulated briefing schedule on Respondents' return and motion to dismiss, which the court entered on January 3, 2023. [Docket No. 4.]

This matter is fully briefed and is suitable for resolution without a hearing. Civ. L.R. 7-

---

[1] Individualized custody hearings are also known as bond hearings. These terms are used interchangeably.

1(b). For the following reasons, the motion to dismiss is denied.[2] The habeas petition is granted.

## I.   BACKGROUND

Diaz was born in Mexico in 1968. He experienced domestic violence and sexual abuse as a child and fled with his family to the United States in 1983. He became a lawful permanent resident in 1990. Petition ¶¶ 19-22. In 2019, Diaz was convicted of assault with a deadly weapon in California state court and sentenced to probation with credit for time served. *Id*. at ¶ 26. After he was released from custody, Diaz struggled with homelessness and poverty. *Id*. at ¶ 27. In August 2020, Diaz was convicted of aggravated assault with a weapon and sentenced to two years in prison. [Docket No. 13-2 (Abad Decl., Jan. 17, 2023) ¶ 3, Exs. A, C.] During his incarceration, Diaz was assaulted by two cellmates. He was later diagnosed with Post Traumatic Stress Disorder based on his childhood trauma and the attack. Petition ¶¶ 27-29. Diaz ultimately served ten months in custody related to the probation violation. *Id*. at ¶ 27. Diaz remains subject to state parole, and if released, his parole officer would initiate an immediate referral to transitional housing and programming. *Id*. at ¶ 30.

On June 23, 2021, DHS charged Diaz as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony and issued a Notice to Appear. Petition ¶ 32, Ex. A (Notice to Appear, "NTA"). DHS detained Diaz the same day and transferred him to Golden State Annex in McFarland, California. Petition ¶¶ 31, 43, Ex. B. According to DHS Deportation Officer Juan Carlo Abad, DHS conducted a custody determination when Diaz was taken into custody in light of the requirements imposed in *Fraihat v. U.S. Immigration & Customs Enforcement*, 445 F. Supp. 3d 709, 751 (C.D. Cal. 2020), *rev'd and remanded,* 16 F.4th 613 (9th Cir. 2021), regarding custody determinations for immigration detainees with risk factors for COVID-19. Abad Decl. ¶ 5. An ICE officer "concluded that detention was warranted because Mr. Diaz constituted a threat to public safety if released." *Id*. at ¶ 5, Ex. D (June 23, 2021 Notice of Custody Determination). Since then, Diaz has not received or requested a custody redetermination hearing or a hearing challenging his detention pursuant to *In*

---

[2] Respondents' unopposed motion to accept their untimely reply in support of the motion to dismiss, which was filed one day after it was due, is granted. [Docket No. 17.]

*re Joseph,* 22 I. & N. Dec. 799, 805 (BIA 1999), which provides a noncitizen "the opportunity to offer evidence and legal authority on the question whether the [government] has properly included him within a category that is subject to mandatory detention" pending removal proceedings. Abad Decl. ¶ 5.

At the time Diaz filed the instant petition, he had been detained for over 18 months.

### A. Removal Proceedings

Diaz appeared pro se throughout his administrative immigration proceedings. Petition ¶ 33. He was granted two continuances to allow him time to attempt to retain counsel. Abad Decl. ¶¶ 6, 7. On August 26, 2021, Diaz appeared for a removal hearing before an immigration judge ("IJ") without counsel. *Id*. at ¶ 8. At some point, his adult daughter filed a family-based visa petition on his behalf on the advice of an immigration judge ("IJ"). The IJ continued the proceedings in 30-day increments for eight months pending the filing and adjudication of the visa petition. *Id*. at ¶¶ 34, 35; Abad Decl. ¶ 9.

Diaz subsequently filed applications for asylum, withholding of removal, and deferral of removal under the Convention Against Torture. A different IJ denied those applications on April 7, 2022 and ordered him removed. Petition ¶¶ 36-38, Ex. E; Abad Decl. ¶ 10. Diaz appealed the decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on August 2, 2022. Petition ¶ 39, Ex. F. With the assistance of pro bono counsel, Diaz then filed a petition for review of the BIA's decision with the Ninth Circuit Court of Appeals and the Ninth Circuit issued a temporary stay of removal on August 4, 2022. Petition ¶ 40, Ex. P. Diaz filed a motion to reopen with the BIA on October 20, 2022. Petition ¶ 41. The Ninth Circuit subsequently granted Diaz's unopposed motion to hold proceedings in abeyance pending the BIA's adjudication of the motion to reopen. *Id*. at ¶ 42, Ex. P.

On April 11, 2023, the BIA denied Diaz's motion to reopen proceedings. [Docket No. 20.] Diaz moved to consolidate his petitions for review before the Ninth Circuit and for a briefing schedule, which remains pending. *See id*.

### B. Details of Diaz's Confinement

As noted, Diaz is confined at Golden State Annex ("GSA"), which is in McFarland,

California. [Docket No. 13-1 (Gonzalez Decl. Jan. 17, 2022) ¶ 4.] GSA is managed by The GEO Group, Inc. ("GEO"), an independent contractor. The warden, known as the "Facility Administrator," is a GEO employee based in McFarland. *Id*. McFarland is in Kern County, which is in the Eastern District of California. [Docket No. 13 (Motion to Dismiss & Return to Petition, "MTD/Return") 4.]

DHS Acting Assistant Field Office Director Nancy Gonzalez is based in Bakersfield, California. She is assigned to the Bakersfield Sub-Office within ICE's Enforcement and Removal Operations, San Francisco Field Office. The Bakersfield Sub-Office is responsible for oversight of noncitizens detained at GSA. Gonzalez Decl. ¶ 1. Gonzalez states that she supports the Deputy Field Office Director and Field Office Director "in managing operations and procedures of enforcement and removal activity" throughout her area of responsibility, which includes "providing oversight and supervision of Supervisory Detention and Deportation Officers and their staff who maintain the docket management of ICE detainees at GSA." *Id*. According to Gonzalez, she and her staff "directly liaise with the GSA Facility Administrator and other GEO personnel regarding the detainees at GSA." *Id*. at ¶ 5. Her direct line supervisor, Acting Deputy Field Office Director Richard Chang, is based in San Francisco. *Id*. at ¶ 6. Chang is responsible for ICE immigration enforcement operations within nine counties, including Kern County. Chang directly reports to Respondent Moises Becerra, Field Office Director ("FOD") of the "San Francisco Area of Responsibility," which encompasses offices in seven cities in California, as well as Hawaii, Guam, and the Northern Mariana Islands. *Id*. at ¶¶ 7, 8. Gonzalez states that Becerra is responsible for the management and direction of all enforcement and removal operations and law enforcement operations within the boundaries of the San Francisco Area of Responsibility. *Id*. at ¶ 8.

### C.    The Habeas Petition

On December 27, 2022, Diaz filed a petition for writ of habeas corpus in which he asks the court to order his release from custody within 14 days unless Respondents schedule an individualized custody hearing. The petition asserts a single claim for relief: that his prolonged detention without a hearing violates the Fifth Amendment's Due Process Clause.

4

## II. JURISDICTION OVER THE PETITION

Diaz filed his habeas petition pursuant to 28 U.S.C. § 2241, which allows "the Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Diaz asserts that his continued detention violates his due process rights under the Fifth Amendment of the United States Constitution and does not ask this court to defer removal. *See* Petition ¶¶ 4-6, 71-73. The Ninth Circuit has held that "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211-12 (9th Cir. 2011)). Therefore, the court has subject matter jurisdiction pursuant to Section 2241. *See, e.g., Hilario Pankim*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *4 (N.D. Cal. May 19, 2020) (concluding that court had subject matter jurisdiction over Section 2241 petition where noncitizen detainee argued his continued detention violated his constitutional rights).

Nonetheless, Respondents contend that the habeas petition should be dismissed for lack of jurisdiction and improper venue, arguing that "jurisdiction lies in only one district: the district of confinement," which is the United States District Court for the Eastern District of California. MTD/Return 1, 5, 8. Respondents make a related argument that the warden of GSA, whom they do not identify, is the proper respondent for Diaz's habeas petition, not FOD Becerra. *Id*. at 10-11. As an alternative to dismissal, Respondents argue that the court should transfer the petition to the Eastern District. *Id*. at 12. Respondents primarily rely on *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), and *Lopez-Marroquin*, 955 F.3d at 759 in support of their jurisdiction and venue arguments. *Id*. at 5-8.

This court rejected the government's nearly identical arguments in *Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022), and concluded that the FOD of the San Francisco office with "ultimate control over GSA" was the proper respondent in a Section 2241 petition filed by a noncitizen detained at GSA, which is located in the Eastern District. *See id*. (collecting cases). Respondents offer no facts or argument that support a different

5

outcome here. Accordingly, the court concludes that the Northern District is the proper forum for Diaz's petition and denies Respondents' motion to dismiss.

### III. MERITS OF THE PETITION

#### A. Legal Framework for Entitlement to a Bond Hearing

The INA provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* In general, section 1226(a) governs detention during the pendency of a noncitizen's removal decision, and section 1231 governs detention following the issuance of a final removal order.

Section 1226(a) provides the Attorney General with discretionary authority to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Prieto-Romero*, 534 F.3d at 1057. A noncitizen detained pursuant to section 1226(a) can appeal ICE's initial custody determination to an immigration judge, who is authorized to "release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19(a) (granting immigration judges jurisdiction to review custody and bond determinations). By contrast, section 1226(c) mandates detention for noncitizens who have committed certain criminal offenses. 8 U.S.C. § 1226(c). A noncitizen subject to mandatory detention under section 1226(c) can only be released for witness protection purposes and if the noncitizen "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

The Supreme Court and the Ninth Circuit have long "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Hayes* ("*Rodriguez I*"), 591 F.3d 1105, 1114 (9th Cir. 2010). In 2015, the Ninth Circuit considered the procedural protections available to noncitizens detained under 8 U.S.C. §§ 1225(b)

and 1226(c). *See Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *reversed by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Rodriguez III*, a certified class of noncitizens challenged their prolonged detentions pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without the provision of individualized bond hearings.[3] 804 F.3d at 1065. Following the entry of a preliminary injunction, which was affirmed on appeal, *see Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), the district court granted summary judgment to the class and entered a permanent injunction requiring the government to provide a bond hearing to any class member subject to detention longer than six months. 804 F.3d at 1065. The government was ordered to provide each detainee with a bond hearing by his or her 195th day of detention, with such hearings occurring automatically after notice. *Id.* at 1072. The district court also required the government to prove by clear and convincing evidence that the detainee was a flight risk or a danger to the community in order to justify the denial of bond. *Id*. at 1071. The government appealed from the entry of the permanent injunction, and the class cross-appealed the district court's denial of certain procedural requirements for bond hearings. *Id*. at 1072-73.

In relevant part, the Ninth Circuit court affirmed summary judgment and the entry of the permanent injunction as to the section 1226(c), 1225(b), and 1226(a) subclasses. Relying on the canon of constitutional avoidance, the court construed sections 1225(b) and 1226(c) as imposing a

---

[3] Section 1225(b) "applies to 'applicants for admission' who are stopped at the border or a port of entry, or who are 'present in the United States' but 'ha[ve] not been admitted.'" *Rodriguez III*, 804 F.3d at 1081 (quoting 8 U.S.C. § 1225(a)(1)). "The statute provides that asylum seekers 'shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). As to all other such applicants for admission, the statute provides for mandatory detention "if the examining immigration officer determines that [the individuals] seeking admission [are] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

As discussed above, 8 U.S.C. § 1226(c) "requires that the Attorney General detain any non-citizen who is inadmissible or deportable because of his criminal history upon that person's release from imprisonment, pending proceedings to remove him from the United States." *Rodriguez III*, 804 F.3d at 1078, n.8. Detention under section 1226(c) is mandatory and individuals detained under that section may be released only if the government deems it "necessary" for witness protection purposes. *Id.* at 1078 (citing 8 U.S.C. § 1226(c)(2)).

Section 1226(a) provides that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1231(a) governs detention of noncitizens following issuance of a final removal order.

six-month time limit on detention, after which the government may continue detention only under the authority of section 1226(a). *Id.* at 1079, 1082. The court re-affirmed its decision in *Casas* that a noncitizen "subjected to prolonged detention under § 1226(a) is entitled to a hearing to establish whether continued detention is necessary because he would pose a danger to the community or a flight risk upon release." *Id.* at 1085 (citing *Casas*, 535 F.3d at 949-52). The court thereby affirmed the district court's permanent injunction requiring the government to hold bond hearings every six months for noncitizens detained pursuant to sections 1226(c), 1225(b), and 1226(a). *Id.* at 1090. The court also affirmed the requirement that the government "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Id.* at 1087 (quoting *Rodriguez II*, 715 F.3d at 1135 (quoting *Singh*, 638 F.3d at 1203)).

The Supreme Court reversed *Rodriguez III* in *Jennings*. The Court found that the Ninth Circuit had misapplied the canon of constitutional avoidance as to sections 1225(b), 1226(c), and 1226(a), and determined that "its interpretations of the three provisions at issue . . . are implausible." 138 S. Ct. at 842. As to section 1225(b), which "applies primarily to aliens seeking entry into the United States," the Court noted that the statute divides applicants into two categories: section 1225(b)(1) provides that certain noncitizens claiming a credible fear of persecution "shall be detained for further consideration of the application for asylum," while section 1225(b)(2) provides that noncitizens who fall within the scope of that provision "shall be detained for a [removal] proceeding." *Id.* (emphasis added) (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A)). The Court found that "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded." *Id.* The Court rejected the argument that those provisions contain an implicit six-month limit on the length of detention, observing that "nothing in the statutory text imposes any limit on the length of detention" or "even hints that those provisions restrict detention after six months." *Id.* at 842, 843. As to the canon of constitutional avoidance, the Court held that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases . . . [i]nstead, the canon permits a court to 'choos[e] between competing plausible interpretations of a

8

1    statutory text.'" *Id.* at 843.  The Court concluded that sections 1225(b)(1) are 1225(b)(1) are not

2    ambiguous, and that "neither provision can reasonably be read to limit detention to six months."

3    *Id.* at 843-844 (contrasting section 1225(b), which provides that noncitizens "shall be detained"

4    for further proceedings, with section 1231(a)(6), which provides that noncitizens "may be

5    detained" after the completion of the removal period).

6          Similarly, the Court held that section 1226(c), which applies to noncitizens already present

7    in the United States, could not plausibly be construed to include an implicit six-month time limit

8    on the length of mandatory detention.  *Id.* at 846-47.  As to section 1226(a), the Court noted that

9    "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at

10   the outset of detention."  *Id*. at 847.  The Court held that "[n]othing in § 1226(a)'s text . . .

11   supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely,

12   periodic bond hearings every six months in which the Attorney General must prove by clear and

13   convincing evidence that the alien's continued detention is necessary."  *Id.*

14         *Jennings* only entertained statutory challenges to the INA's detention scheme and

15   remanded the question of whether prolonged detention without an individualized bond hearing

16   violates the due process clause of the Fifth Amendment.  Upon remand, the Ninth Circuit stated its

17   "grave doubts that any statute that allows for arbitrary prolonged detention without any process is

18   constitutional" and remanded the issue to the district court to consider it in the first

19   instance.  *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018).

20   **B.     Discussion**

21         The parties do not dispute that Diaz is detained pursuant to the government's mandatory

22   detention authority under section 1226(c).  It is also undisputed that Diaz has been in custody for

23   over 22 months without having been afforded a bond hearing.  Diaz argues that his continued

24   detention without such a hearing violates his Fifth Amendment due process rights.  He asks that

25   the court apply a "bright-line, six-month rule" and find that he is constitutionally entitled to a bond

26   hearing because his detention has lasted for more than six months.  *See* Petition ¶ 59.  In the

27   alternative, he contends that due process requires that he be given an individualized bond hearing

28   under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Petition ¶¶ 60-64.

In response, Respondents argue that "detention under § 1226(c) is constitutional so long as the statutory purpose of preventing certain criminal noncitizens from fleeing is being fulfilled, as it undoubtedly is here." MTD/Return 12 (citing *Demore v. Kim*, 538 U.S. 510, 527-28 (2003)). They also argue that "assuming without conceding that *Mathews* might apply, Mr. Diaz's detention is not unconstitutional under that test." *Id*. at 19.

*Demore* provides little support for Respondents' position. In *Demore*, the Supreme Court held that mandatory detention under section 1226(c) for the "brief period necessary" to complete removal proceedings is "constitutionally permissible" under the Fifth Amendment. 538 U.S. at 513, 531. The Supreme Court cautioned, however, that such detention has "a definite termination point" and typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 529-30. The Court accordingly concluded that the six-month detention at issue constituted reasonable "temporary" confinement. *Id.* at 530-31. Here, Diaz has been detained for nearly two years—a considerably longer period of time than the detention at issue in *Demore*. *See, e.g., Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at \*4 (N.D. Cal. Jan. 25, 2019) (noting that "[i]n contrast to the situation at the time *Demore* was decided, case processing times today are considerably longer" and concluding that petitioner's detention for over one year without a bond hearing violated his due process rights).

As this court has previously observed, since *Jennings*, "there remains 'a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional.'" *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at \*7 (N.D. Cal. Apr. 6, 2020) (quoting *Gonzalez*, 2019 WL 330906, at \*3). Absent controlling authority establishing a bright-line rule for a due process right to receive periodic bond hearings, the court finds that it is appropriate to conduct an individualized due process analysis under *Mathews*, in which the Supreme Court held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. at 333; *see Salesh P.*, 2022 WL 17082375, at \*8 (collecting cases applying *Mathews* and applying its test).

10

The three-part *Mathews* test requires courts to consider "(1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court." *Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018) (citing *Mathews*, 424 U.S. at 334-35).

The first factor is Diaz's interest. Courts have held that there is a strong private interest based on the duration of the detention. *De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (finding a strong private interest where the petitioner "risks continued detention absent a bond hearing"). "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez IV*, 909 F.3d at 256-57 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). In this case, Diaz has been detained for nearly two years without a bond hearing, and there is no reasonably certain end to his detention. This period of detention leans heavily toward finding a strong private interest at stake. *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 776 (N.D. Cal. 2019) (finding a strong private interest where the petitioner had been detained 22 months and received his last bond hearing 16 months prior); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or unreasonable imprisonment" where he had been detained for one year without a bond hearing).

Respondents do not meaningfully dispute that Diaz has a strong private interest. Instead, they assert that Diaz has never requested a hearing to contest his detention and contend that his "time in detention is principally due to his own litigation choices," noting his multiple requests for continuances, petition for review, and motions before the Ninth Circuit. MTD/Return 20-21. Respondents' argument is not persuasive. Notably, Diaz represented himself throughout a large portion of the removal proceedings and sought two of the continuances at issue to obtain counsel. "For decades, [the Ninth Circuit] ha[s] described United States immigration law as labyrinthine," and the court recently noted that "[n]avigating the asylum system with an attorney is hard enough; navigating it without an attorney is a Herculean task." *Usubakunov v. Garland*, 16 F.4th 1299, 1300 (9th Cir. 2021). Moreover, Respondents do not contend, and there is no evidence before the

11

court, that Diaz purposefully delayed the proceedings. The court concludes that "[t]he duration and frequency of" Diaz's requests for continuances "do not diminish his significant liberty interest in his release or his irreparable injury of continued detention without a bond hearing." *See Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023); *Masood v. Barr*, No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("it ill suits the United States to suggest that [petitioner] could shorten his detention by giving up [his appeal] rights and abandoning his asylum application."). Accordingly, the court finds that the first *Mathews* factor weighs in Diaz's favor.

The second factor addresses the government's interest. Respondents argue that detention serves the government's interest in protecting the public from noncitizens who have been convicted of crimes and preventing them from fleeing prior to or during their removal proceedings. MTD/Return 22-23. However, "the governmental issue at stake in [these proceedings] is the ability to detain [Diaz] *without providing him with [a] bond hearing*, not whether the government may continue to detain him." *Lopez Reyes*, 362 F. Supp. 3d at 777 (emphasis in original). Respondents do not explain how providing Diaz with a bond hearing after 22 months of detention would undermine its interest in enforcing immigration laws and effecting removal. "After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight risk or danger to the community." *Jimenez*, 2020 WL 510347, at *3 (observing that argument that petitioner's "continued detention remains constitutional because it serves an immigration purpose: to assure his presence at removal . . . loses sight of what is at stake. [Petitioner] seeks a bond hearing, not unqualified release."). The court concludes that "[r]equiring the government to provide [Diaz] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk." *Perera v. Jennings*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021). Therefore, this factor is neutral at best.

The final factor looks at the value of additional safeguards given the risk of erroneous deprivation of Diaz's rights. *See Soto*, 2018 WL 3619727, at *3; *Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414, at *9 (N.D. Cal. Dec. 22, 2020). In this case, DHS's sole

1   detention decision was made in June 2021, at a time when Diaz was representing himself. Since
2   that time, Diaz has secured pro bono counsel. He states that he has also obtained the assistance of
3   a social worker, filed a U visa application, and "gathered new and material evidence critical not
4   only to his applications for relief but also as to the circumstances of his sole disqualifying
5   offense." [Docket No. 14 (Traverse/Opp'n) 25.] This evidence has never been considered and
6   weighed by a neutral decisionmaker evaluating the necessity of Diaz's ongoing detention. In these
7   circumstances, the value of additional procedural safeguards—i.e., a bond hearing—is high given
8   the risk of an erroneous deprivation of Diaz's rights. *See Rajnish*, 2020 WL 7626414, at *9
9   (holding that "the value added by another hearing is great" where petitioner had been held for nine
10  months since an initial bond hearing that "was unconstitutional and assigned the risk of error to
11  him, not to the government" and there had been "important developments" in the proceedings
12  since then).
13        Having considered and weighed the *Mathews* factors, the court concludes that Diaz's
14  continued detention without a bond hearing violates his due process rights under the Fifth
15  Amendment. Due process requires Respondents to provide Diaz with a bond hearing. At the
16  hearing, the government must justify his continued detention by establishing by clear and
17  convincing evidence that he is a flight risk or a danger to the community pursuant to *Singh*, 638
18  F.3d at 1203. *See id*. at 1204 (observing that the "Supreme Court has repeatedly reaffirmed the
19  principle that 'due process places a heightened burden of proof on the State in civil proceedings in
20  which the 'individual interests at stake . . . are both particularly important and more substantial
21  than mere loss of money.'" (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)).
22  //
23  //
24  //
25  //
26  //
27  //
28

## IV. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is granted. Diaz must be provided with a bond hearing before an immigration judge by 14 days from the date of this order. At that hearing, DHS must establish by clear and convincing evidence that Diaz is a flight risk or a danger to the community in order to continue his detention.

**IT IS SO ORDERED.**

Dated: May 2, 2023



Donna M. Ryu
Chief Magistrate Judge